IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SUNDAY JOSIAH IBEAGWA,<br><br>    Petitioner,<br>vs.<br><br>PHILLIP CRAWFORD, Field Office Director, Immigration and Customs Enforcement<br><br>    Respondent. | No. CV 06-2646-PHX-SRB (BPV)<br><br>**REPORT AND RECOMMENDATION** |

On November 3, 2006, Sunday Josiah Ibeagwa, ("Petitioner"), currently confined in the Eloy Detention Center in Eloy, Arizona, filed a Petition for Writ of Habeas Corpus by A Person in Federal Custody ("Petition"), pursuant to Title 28, U.S.C. § 2241. The District Court denied Petitioner's first claim for relief, and ordered Respondent to answer Ground Two. The Respondent filed an Answer to the Petition for Habeas Corpus on January 11, 2007, with Exhibits A through P attached. A Reply was filed by Petitioner on January 25, 2007.

Pursuant to the Rules of Practice of this Court, on November 16, 2006, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. The Magistrate Judge recommends the District Court enter an order granting Petitioner's Petition for Writ of Habeas Corpus.

**Factual and Procedural Background**

Petitioner is a citizen and native of Nigeria. (Ex. A.)[1] He entered the United States at or near Los Angeles, California, on or about July 12, 2000. (Id.) On July 9, 2002, Petitioner's status was adjusted to that of a conditional resident pursuant to Section 245 of the Immigration and National Act ("INA"), 8 U.S.C. § 1255. (Id.)

On December 2, 2003, in the Superior Court of the State of California for the County of Los Angeles, Petitioner was convicted upon entry of a guilty plea to one count of Forgery and one count of Grand Theft of Personal Property in violation of California Penal Code §§ 470(D) and 487(A), respectively. (Ex. C.) On May 5, 2004, Petitioner was sentenced to one year and four months imprisonment. (Id.)

On July 9, 2004, Petitioner's conditional resident status was terminated for failure to file a Form I-751 petition to remove conditions on his conditional resident status. (Ex. D.) On or about November 24, 2004, the United States served Petitioner with a Notice to Appear in removal proceedings under section 240 of the INA, charging Petitioner as subject to removal pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), in that he, at any time after admission, was convicted of an aggravated felony as defined in section 101(a)(43)(G) of the Act. (Ex. A.)

Petitioner was one of several detainees who appeared for removal proceedings on December 7, 2004. (Ex. L, p.1.) Petitioner, having apparently requested to be represented by an attorney[2], had his removal hearing reset to January 4, 2005. (Id, p.4.)

---

[1] All exhibit numbers in this Report and Recommendation are references to the exhibits attached to Respondent's " Response in Opposition to Petition for Writ of Habeas Corpus."

[2] The names and A#'s of the detainees requesting to be represented by counsel are not discernible from the transcript. By process of elimination, however, it appears that Petitioner was one of two unidentified detainees who requested attorneys at the December 7, 2004 removal proceeding, and thus had their

1 Respondent's transcripts reflect that Petitioner did not appear again at a hearing until
2 March 21, 2005, most likely as a result of transfer of from criminal, to immigration
3 detention.

4     On February 1, 2005, Petitioner was served a Notice of Custody Determination,
5 informing Petitioner that pursuant to section 236 of the INS, and 8 C.F.R. 236, the
6 reviewing officer had determined that Petitioner was to be detained pending a final
7 determination by the immigration judge ("IJ") in his case. (Ex. G.) Petitioner requested
8 a redetermination of the custody decision by an IJ.

9     On March 4, 2005, the United States filed additional charges of
10 inadmissibility/deportability, charging Petitioner with removal pursuant to §
11 237(a)(2)(A)(iii) of the INA, having been convicted of a theft offense (including receipt
12 of stolen property) or burglary offense for which the term of imprisonment is at least
13 one year, and, pursuant to section 237(a)(2)(A)(i) of the INA, having been convicted
14 of a crime involving moral turpitude committed within five years after the date of
15 admission, and for which a sentence of one year or longer may be imposed. (Ex. E.)
16

17     On March 7, 2005, the IJ considered Petitioner's request for a change in the
18 custody status of the Petitioner and entered a form order, checking the box that the IJ
19 had "[n]o Jurisdiction pursuant to 236 of the Act." (Ex. H.)

20     On March 21, 2005, Petitioner appeared in front of an IJ for a removal hearing,
21 and again requested to be represented by an attorney, and his hearing was continued.
22 (Ex. L, p.41-42.) On that same date, the United States again filed additional charges
23 of inadmissibility/deportability pursuant to the termination of Petitioner's conditional
24 resident status, under section 237(a)(1)(D)(i) of the INA. (Ex. F.)

25
26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
27             hearing reset to January 4, 2005. (Ex. L, p. 3.)
28

1 Petitioner's removal hearing was continued again on April 13, 2005, as his attorney was on vacation. (Ex. L, p.48-51.) Petitioner moved to terminate his removal proceedings, asserting that his criminal conviction was not final for immigration law purposes, that his conditional resident status had not been properly terminated, and that he was entitled to seek a waiver pursuant to §§ 212(h) and 216(c)(4) of the INA. (Ex. J.)

Petitioner's next appeared at a removal hearing on April 21, 2005, without counsel. (Ex. L, p.52.) The IJ set the matter for a contested hearing on May 5, 2005. (Ex. L, p.57.) The IJ found the crime involving moral turpitude charge to be sustained, as well as the conditional residence termination charge to be sustained. (Id., p.68.) Petitioner did not contest the charge based on commission of a crime of moral turpitude. (Id., p. 66-67.) The IJ requested further briefing on the issue of Petitioner's commission of an aggravated felony and eligibility for a 212(h) waiver. (Ex. L, p. 68-69.)

Petitioner appeared again on June 1, 2005, without counsel. (Ex. L, p.75.) The IJ found that Petitioner was still not eligible for a 212(h) waiver, and that Petitioner's convictions were a crime of moral turpitude, but did not find that the convictions were aggravated felonies based upon *Penuliar v. Ashcroft*, 395 F.3d 1037 (9th Cir. 2005).

On June 3, 2005, Petitioner moved for a second redetermination hearing claiming changed circumstances, asserting that he was not currently "charged with removability based on a mandatory detention ground." (Ex. I.) The IJ denied the motion, finding that the aggravated felony charge was not sustained, but that the charge of removability pursuant to § 237(a)(2)(A)(i) of the INA for conviction of a crime involving moral turpitude within five years after admission, and for which a sentence of imprisonment of at least one year was in fact imposed, subjected Petitioner to mandatory detention provisions. (Id.)

- 4 -

1         Petitioner's next proceeding was held on July 5, 2005, where he presented
2 evidence to support his asylum claim. (Ex. L, p. 87.) The IJ postponed the case for
3 three weeks in order to allow the government to investigate his claim. (Ex. L, p.171.)
4         After two continuances to allow the government more time to investigate, (Ex.
5 L, pp. 174-75,176-87 ), the hearing was concluded on October 5, 2005, and a written
6 decision issued on October 7, 2005 denying Petitioner's application for a 212(h) waiver,
7 finding Petitioner's application for cancellation of removal pursuant to section 240A(a)
8 of the INA pretermitted, denying Petitioner's application for Asylum, denying
9 Petitioner's application for withholding of removal pursuant to section 241(b)(3) of the
10 INA, and denying Petitioner's request for relief pursuant to the Convention Against
11 Torture, and ordering Petitioner removed from the United States to Nigeria. (Ex. L, p.
12 188-193, Ex. M.)
13         Petitioner filed an appeal and motion challenging the IJ's order, and the Board
14 of Immigration Appeals ("BIA") dismissed the appeal and denied Petitioner's motion.
15 (Ex. N.)
16         Petitioner filed a Petition for Review of Removal Order with the Ninth Circuit
17 Court of Appeals on February 16, 2006, and moved for a stay of removal pending
18 consideration of the petition. (Ex. O.) On that same date, the Ninth Circuit granted
19 Petitioner an automatic temporary stay of removal under Ninth Circuit General Order
20 6.4(c)(1)(3). *See Ibeagwa v. Gonzales*, No. 06-70845.
21         On May 17, 2006, Petitioner was served with a letter entitled "Decision to
22 Continue Detention." (Ex. P.) The letter informed Petitioner that his custody status had
23 been reviewed, and that, pursuant to 8 C.F.R. § 241.4(d)(1), the reviewer was unable
24 to conclude that Petitioner would not be a danger to the community and/or that he
25 would be able to comply with the requirements of an Order of Supervision. (Id.) The
26 reviewer noted that, although Petitioner did not have an extensive criminal history, he
27
28

had begun committing criminal offenses soon after he arrived in the United States. (Id.)

On November 3, 2006, the Petitioner filed the instant Petition.

## DISCUSSION

**Petitioner's Arguments**

Petitioner argues that he has been denied a meaningful custody review for consideration for release.

**Respondents' Arguments**

Respondents argue that the government's decision to continue Petitioner's decision pending the Ninth Circuit's decision in this case was a proper exercise of its authority under the INA and corresponding regulations. Respondent further argues that Petitioner is not subject to release under *Tijani*, because petitioner is not a lawfully admitted alien, and has been denied all forms of relief by both the immigration court and the BIA. Furthermore, Petitioner's detention during proceedings was mandated by INA § 236(c).

**Jurisdiction**

The federal habeas corpus statute, 28 U.S.C. § 2241 grants District Courts the power to issue habeas corpus relief where the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. Specifically, the Supreme Court has held that Section 2241 confers jurisdiction upon the federal courts to hear cases involving statutory and constitutional challenges to both pre- and post-removal detention of aliens in deportation proceedings. *See Demore v. Kim*, 123 S.Ct. 1708, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001).

Mandatory Detention

Petitioner is subject to an administratively final order of removal. See 8 U.S.C. § 1101(a)(47)(B)(defining final order of deportation). Although Petitioner is subject to an administratively final order of removal, the "removal period" has not yet begun

- 6 -

1  because his removal order is currently on appeal to the Ninth Circuit and because the
2  Ninth Circuit has granted Petitioner a stay of his removal. The "removal period" will
3  not begin for Petitioner until "the date of [Ninth Circuit's] final order." 8 U.S.C. §
4  1231(a)(1)(B)(ii). Accordingly, Petitioner's current detention is pursuant to the
5  pre-removal order detention statute, 8 U.S.C. § 1226, section 236 of the INA, rather
6  than the post-removal order detention statute, 8 U.S.C. § 1231. *See Tijani v. Willis,*
7  430 F.3d 1241, n.7, (9th Cir. 2005); *see also Kothandaraghipathy v. DHS*, 396
8  F.Supp.2d 1104, 1106 (D.Ariz. 2005).

9  Petitioner admitted that he was subject to removal after having been convicted
10 of a crime involving moral turpitude committed within five years after the date of
11 admission and for which a sentence of one year or longer might be imposed. (Ex. L,
12 p. 66-67.) This admission subjected Petitioner to the mandatory detention provisions
13 of 8 U.S.C. § 1226(c), which authorizes detention of aliens who have committed certain
14 crimes including, inter alia, "crimes involving moral turpitude committed within five
15 years" after the date of admission, and "for which a sentence of one year or longer may
16 be imposed." §§ 1226(c)(1)(B), 1227(a)(2)(A)(i). Although the government's charge
17 of commission of a crime of aggravated assault was never sustained, Petitioner's
18 admission of a conviction under § 1227(a)(2)(A)(i) satisfied the conditions of §
19 1226(c)(1)(B), thus rendering his detention pending a decision on Petitioner's removal
20 proceedings statutorily permissible.

21 Due Process

22 In *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001),
23 the United States Supreme Court recognized the constitutional implications of
24 prolonged detention for those subject to a valid order of removal. "Freedom from
25 imprisonment-from government custody, detention, or other forms of physical
26 restraint-lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause
27 protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause
28

- 7 -

1 unless the detention is ordered in a criminal proceeding with adequate procedural
2 protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a
3 special justification, such as harm-threatening mental illness, outweighs the
4 'individual's constitutionally protected interest in avoiding physical restraint." ' *Id.*
5 (citations omitted).

7 The Fifth Amendment entitles aliens to due process of law in deportation
8 proceedings. *Demore v. Kim*, 123 S.Ct. 1708, 1717 (citing *Reno v. Flores*, 507 U.S.
9 292, 306, 113 S.Ct. 1439 (1993)). The Court in *Kim*, addressing a constitutional
10 challenge to the mandatory detention provision, held that detention during removal
11 proceedings is a "constitutionally permissible part of that process." *Kim*, 123 S.Ct. at
12 1722. Key to the Court's holding was the "definite termination point" of the
13 proceedings, roughly a month and a half in the vast majority of cases, and about five
14 months in the minority of cases in which the alien chooses to appeal; and the criminal
15 alien's concession that he or she is deportable[3]. *Kim*, 123 S.Ct. 1720-22.

16 Petitioner asserts, in his reply, that the decision to deny him release violates the
17 Due Process Clause of the Fifth Amendment because the Respondent "does not make
18 decisions concerning alien's custody status in a neutral and impartial manner" and that

---

[3] Petitioner concedes that he is removable as an alien convicted of a crime involving moral turpitude, and has sought relief from the BIA and the Ninth Circuit only from the IJ's decision denying the Petitioner's application for relief from removal. See Ex. N, n.1, Ex. O, ¶ 2. This distinction is important because the Ninth Circuit has determined that aliens who have not conceded deportability may only be mandatorily detained, pursuant to 8 U.S.C. § 1236(c), during an "expedited period" of removal proceedings. *See Tijani v. Willis*, 430 F.3d 1241, 1241-1242 (9th Cir. 2005). Because Petitioner has conceded deportability, *Tijani* does not apply.

- 8 -

Respondent failed "to provide a neutral decision-maker to review the continued custody of Petitioner."

Respondent's Answer states that Immigration and Customs Enforcement's ("ICE's") review of Petitioner's detention (Ex. P.) was conducted pursuant to 8 C.F.R. § 241.4(d)(1), which governs continued detention of aliens in custody beyond the removal period. As discussed above, however, the "removal period" has not yet begun because his removal order is currently on appeal to the Ninth Circuit and because the Ninth Circuit has granted Petitioner a stay of his removal. Accordingly, Petitioner was not entitled to review of his custody status under 8 C.F.R. § 241.4.

Recognizing that Petitioner's detention is properly analyzed under the mandatory provisions of 8 U.S.C. § 1226(c), however, does not end the inquiry. The Supreme Court in *Kim* held that detention during removal proceedings is a constitutionally permissible part of that process. The Court distinguished its holding in Kim from its prior holding in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001). In *Zadvydas*, the Court considered a due process challenge to detention of aliens following a final order of removal. The Court in *Kim* found *Zadvydas* "material different" in two respects. First, in *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable, and thus, the Court found, that the detention there did not serve its immigration purpose (prevention of fleeing prior to their removal.) *Kim*, at 527, 1719-20 (citing *Zadvydas*, at 690, 121 S.Ct. 2491.) Unlike *Zadvydas*, the Court in *Kim* found the statutory provision at issue serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed. *Kim*, at 527-28, 123 S.Ct. 1720.

Second, the Court found *Zadvydas* materially different in another respect as well; the period of detention in *Zadvydas* was "indefinite" and "potentially permanent." Kim,

- 9 -

at 528, 123 S.Ct. 1720.  The Court in *Kim* determined that the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and five months in the minority of cases in which the alien chooses to appeal. *Kim v. Demore*, 538 U.S. 510, 530, 123 S.Ct. 1708, 1721.

This case falls squarely into neither *Zadvydas* nor *Kim*.  District Judge Underhill of the United States District Court for the District of Connecticut, astutely summed the relationship between the holdings in *Zadvydas* and *Kim*, and the facts of a similar case:

> In short, both *Zadvydas* and *Kim* upheld the same fundamental principles. Both recognized an alien's right to due process in deportation proceedings, in particular a right to liberty; both recognized Congress's considerable authority to abrogate that right; and both recognized that Congress's authority allows it to impose reasonable restraints on liberty in order to further its goals of securing attendance at removal proceedings and protecting the community. *Zadvydas* went on to indicate that, under section 241(a), a lengthy detention that did not clearly relate to both those goals would exceed the Constitution's bounds, while *Kim* held that, under section 236(c), a short detention that was clearly related to those goals did not exceed the Constitution's bounds.
>
> ...
>
> Though both Zadvydas and Kim are instructive, neither addresses the question presented by this case, namely, whether [Petitioner's] extremely lengthy detention under section 236(c) constitutes a permissible infringement of her constitutionally protected right to liberty.

*Fuller v. Gonzales*, 2005 WL 818614, 4 -5  (D.Conn.,2005).

Petitioner asks this Court for immediate release.  This Court recognizes that, ordinarily, detention decisions under 8 U.S.C. § 1226 are not subject to judicial review. Petitioner's continued detention, without review, has become presumptively unreasonable.  *See Zadvydas*.  Furthermore, review of the decision previously rendered in this case, demonstrates that Petitioner, although granted a detention review, was not granted a meaningful review.

1     This case has far exceeded the brief period of detention envisioned by the Court
2 in *Kim* for the majority of cases, or even the minority of cases in which the Court
3 considered the alien might appeal.  Petitioner has now been in detention for well over
4 two years[4].  Although Petitioner's case was reviewed, Petitioner has been completely
5 deprived of all liberty without a hearing before an immigration judge.  In fact, Petitioner
6 has already been held in detention approximately a year longer than he was held for his
7 underlying criminal conviction.

8     This Court has reviewed both the docket of Petitioner's appeal to the Ninth
9 Circuit court of appeals, as well as the underlying removal proceedings before the IJ
10 and the BIA.  Petitioner's appeal to the Ninth Circuit has been pending since Feb 16,
11 2006.  The case was delayed when the Government filed, then withdrew a motion to
12 dismiss for lack of jurisdiction, and when the Ninth Circuit considered whether the case
13 should be included in the mediation program, and both parties have moved for some
14 minor continuances.  The case has not yet been fully briefed.  *See Ibeagwa v. Gonzales*,
15 No. 06-70845.

16     Petitioner's proceedings before the IJ and the BIA were delayed when Petitioner
17 attempted to secure an attorney, when the IJ attempted to ascertain Petitioner's asylum
18 claim, and when the IJ attempted to have the government investigate Petitioner's asylum
19 claim, and, rather than informing the IJ that the government was unwilling to do so, the
20 government repeatedly appeared at removal proceedings without having performed any
21 investigation.  It does not appear from the record that any delay is an attempt on
22 Petitioner's behalf to delay the proceedings.

23     Petitioner's so called custody review did not meet the constitutional standards
24 procedural due process demands in this case.  As expressed by District Judge Underhill,

---

[4] Respondent asserts that Petitioner has been in custody since his apprehension on February 1, 2005.  (Answer, p.7, n.9)

- 11 -

1  continued detentions of this length were not contemplated by the majority in *Kim*, and
2  were a cause of concern to the Court in *Zadvydas* and to Justice Kennedy in his *Kim*
3  concurrence. *See Fuller*, at 6. Accordingly, after a careful review of the file in this
4  case, the Magistrate Judge recommends that the District Court order Respondents to
5  release petitioner immediately on reasonable conditions.

6  Alternatively, the Magistrate Judge recommends that the District Court order
7  Respondent to provide Petitioner with a hearing within 60 days before an Immigration
8  Judge with the power to grant him bail unless the government establishes that he is a
9  flight risk or will be a danger to the community.

## RECOMMENDATION

11  Accordingly, for the reasons set forth above, **THE MAGISTRATE JUDGE**
12  **RECOMMENDS** that the District Court, after its independent review of the record, enter
13  an order **GRANTING** the Amended Petition for Writ of Habeas Corpus (Docket #1).

14  Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections
15  within 10 days of being served with a copy of this Report and Recommendation.

16  If objections are not timely filed, they may be deemed waived. If objections are
17  filed the parties should use the following case number: **CV 06-cv-2646-PHX-SRB.**

18  DATED this 9th day of May, 2007.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 12 -